## Peter Wood v. The State.

1. Evidence — Time. — Information charged the commission of the offense on April 30, 1881. The trial was on August 3, 1881. The evidence stated the day of the offense as "April 30." *Held*, sufficient as to time, though the year was not expressly in proof.

2. Information against one party for "loud and vociferous talking and assault" upon another may be based upon an affidavit which charged both the accused and the other with loud and vociferous talking and with assault upon each other.

3. Disturbing Religious Worship — Evidence. — A prosecution for disturbing a congregation assembled for religious worship will not be sustained by proof that the congregation, though disturbed, was assembled exclusively for business purposes, even though the proceedings were opened with religious exercises.

4. Same. — See the opinion *in extenso* for evidence held insufficient to sustain a conviction, even had the information charged the proper offense.

Appeal from the County Court of Houston. Tried below before the Hon. W. B. Wall, County Judge.

The opinion discloses the case.

*Burnett & Nicks*, for the appellants.

*H. Chilton*, Assistant Attorney General, for the State.

White, P. J. Appellant, Peter Wood, though not an ordained minister of the gospel, was a regular licensed exhorter in the Union Prairie colored school-house and church of Houston county, Texas. One Rev. Joe Jolley was the pastor in charge of said church. From some cause not developed in the record, these two holy men unfortunately got at loggerheads and, as appears, indulged in remarks about each other, which, however true they might have been, were not at all flattering to their respective characters. At all events appellant understood that the Rev. pastor had so conducted himself with regard to him.

On the 30th of April, 1881, a conference was held in said church and, as explained by the pastor in his testimony on the trial, "it was a business meeting, and among other things to decide differences among the brethren. . . . The meeting was opened by singing and praying, and I read a chapter in the Bible and made a few remarks, when the meeting was opened for business." Amongst other matters that had been submitted to the conference for adjudication and settlement was the difficulty above mentioned. Being a party interested, the pastor, who was *ex officio* presiding officer, very considerately and very properly excused himself, and George Mann was elected Moderator. A motion was then made and carried that Peter Wood be allowed to make a statement of the nature and cause of the difficulty. Defendant arose and proceeded to do so. Just about this time, parson Jolley says he had given brother Giles Walker a chew of tobacco, and was putting the tobacco back into his pocket. "Defendant, after he got up, laid his left hand upon the Bible, which was open, and said the Bible said, if my brother told a lie it was his duty to tell him of it; and that brother Jolley had as good as swore lies on him." At this Jolley jumped up, his right hand still in his pocket, where he had put his tobacco, and as he got up said "he would take the lie off no man;" and here and then, as one of the witnesses graphically expresses it, "the rumpus begun; there was considerable disturbance." George Mann says "myself and others got between them, and finally squelched the difficulty; don't know that any licks were passed, but the meeting was disturbed. The conference silenced both parties."

In addition to his ecclesiastical punishment of being thus silenced as an exhorter, defendant has also been held answerable to the temporal or secular powers of the State, was prosecuted for disturbance of religious worship, tried and found guilty upon the facts as above stated, and con-

demned by the verdict and judgment rendered in the lower court to pay the sum of $25 fine, and all costs of the proceeding. From this judgment he appeals here, and asks that the judgment be reversed.

The gravamen of the offense, as stated in the information, is "that Peter Wood, in the county of Houston and State of Texas, on the thirtieth day of April, in the year of our Lord one thousand eight hundred and eighty-one, did wilfully disturb a congregation assembled for religious worship, and conducting themselves in a lawful manner, by loud and vociferous talking and by assaulting Joe Jolley, then and there against the peace and dignity of the State."

Several interesting questions are discussed in the able brief of counsel for appellant.

1. That the time of the commission of the offense was not proven. This proposition is not sustained by the record. The date of the offense was stated to be 30th April, 1881; the trial was the 3d of August, 1881, and the witnesses say the disturbance occurred on the 30th April. Parson Jolley says "on the 30th April we had a conference of the church." It is true he does not say in *totidem verbis* that it was April, 1881. But no other meaning can be ascribed to his language, and the objection is too fine and technical, if not hypercritical.

2. That there is a fatal variance between the affidavit or complaint and the information. The complaint charged that the offense was committed by appellant and one Joe Jolley, "by loud and vociferous talking and by assaulting each other." As seen above, the information charged that appellant alone committed the offense "by loud and vociferous talking and by assaulting Joe Jolley." We see no inconsistency between the two charges. If both parties really indulged in loud and vociferous talking and assaulting each other, then each one separately committed his share of it and could be charged with it separately in

a separate information based upon the complaint which charged both jointly. This is just one of those exceptional cases wherein the joint charge comprehends and may be divided into two separate charges without varying the nature of the original charge as stated in the complaint.

3. It is claimed that the evidence does not support the allegations in the information nor the verdict and judgment. The position insisted upon is, that if a disturbance was in fact created by defendant, then the congregation disturbed was not one assembled for religious worship, but a meeting or conference of the church, convened solely for the transaction of business matters. The statute, Penal Code, art. 180, protects and is only intended to protect any congregation or part of a congregation *assembled for religious* worship. Now there is no dispute as to the objects and purposes of the meeting in question; all the witnesses agree that it was a conference for business,— called expressly for that purpose,— and the congregation had assembled alone for that purpose. Religious worship, on the other hand, is where the congregation have assembled for the purpose of performing acts of adoration to the Supreme Being, or to perform religious services in the recognition of God as an object of worship, love and obedience, according to the rites and services of any system of faith entertained with respect to the Deity. If it was in truth a business meeting, then the fact that parson Jolley *ex mero motu* opened the meeting with singing and prayer, and read verses from the Bible, and "made a few remarks," would not and should not be permitted to change the object for which the congregation had really assembled. Despite these badges of religious worship, the primal object of the assembly was business and not worship, and we conceive the statute cannot be strained to cover such congregations, however desirable it might be to have religious orders protected from worldly disturb-

ances in the transaction of their business affairs. But when these worldly matters invade the sacred precincts of the church, and she assumes the right and prerogative of their investigation, she must not expect, where moral influences and religious restraints fail, or are inadequate to protect her from the wrongs and outrages of her own members, to exact from the law any other or further protection than that accorded to other business assemblies or secular associations. We are clearly of opinion that if the difficulty in this instance was wilfully created by Peter Wood, and the congregation was disturbed thereby, the disturbance does not come within the purview of, nor render him liable under the statute, because the congregation was not assembled for religious worship. A different rule obtains in Tennessee, and in the case of *Hollingsworth* v. *State*, 5 Sneed, it was held that the protection afforded religious bodies extended to their business meetings. Our statute does not admit of such interpretation.

But again it is contended that the allegations in the information as to the manner of the disturbance, if any had been created, are not supported by evidence. It was alleged that defendant disturbed the congregation "by loud and vociferous talking, and by assaulting Joe Jolley." The evidence is that instead of being loud and vociferous defendant's "tone of voice was a common one, low and moderate," and from the remarks he indulged, as above quoted, we would imagine his manner was rather deliberate and positive. He laid his hand upon the good book and spoke of an important and mandatory lesson which it taught, according to his reading, viz.: That if a brother told a lie it was his duty to tell him of it. He did not assault Jolley until after Jolley had jumped up and was advancing upon him with all the appearance of being about to draw a weapon from his pocket, though, as we have seen, such was not really

the case. From such imminent hostile demonstrations as they appeared to him, defendant unquestionably had the right to stand upon his self-defense, and rely upon his good right arm even in most sacred places. Insulting words or conduct did not justify Jolley's assault upon him. Up to Jolley's assault upon him no disturbance had been created, and had the congregation been one protected by the statute, in our opinion the pugnacious parson and pastor would have been more to blame than any one else.

The lessons of Christian charity, forgiveness and self-control, which in his daily calling he was doubtless promulgating as shepherd to that little flock, should have admonished him, even under such trying circumstances, of the duty of forbearance and forgiveness, or at all events they should have enabled him to control his temper and refrain from resentment and personal violence within the precincts of the sanctuary.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*